[Civ. No. 3659. Third Appellate District.—December 21, 1928.]

IDA CHADWICK, Plaintiff and Appellant, v. RICHARD W. CHADWICK, Executor, etc., Defendant and Appellant.

Crouch & Sanders and F. G. Blood for Plaintiff and Appellant.

Sweet, Stearns & Forward and Richard M. Kew for Defendant and Appellant.

PLUMMER, J.—In this action both parties have appealed from that portion of the judgment considered adverse to the interest of the party appealing. Both appeals are presented upon the same transcript and argued in the same briefs. For convenience, we will refer to the parties as "plaintiff" and "defendant," just as the title to this cause appeared in the trial court.

The action was brought by the plaintiff to secure a divorce from the defendant and division of alleged community property, and involves the question of the validity of two certain agreements dated May 23, 1908. The action for divorce was begun on July 10, 1924. The trial court found one of the instruments, designated as "Exhibit Number 1," valid, as being simply a property settlement, and determined that the instrument designated as "Exhibit Number 2" was invalid in that it violated the provisions of section 159 of the Civil Code. The decree awarded the plaintiff a divorce and $50 a month as permanent alimony. The appeal of the plaintiff involves the instrument designated as "Exhibit Number 1," while the appeal of the defendant relates to that part of the judgment declaring Exhibit Number 2 invalid. Exhibit Number 1 is in the words and figures following, to wit:

"I, Ida Chadwick, the wife of William J. Chadwick, of the County of Los Angeles, State of California, for and in consideration of the sum of Eighteen Hundred and Fifty Dollars, United States Gold Coin, to me in hand paid this day by said William J. Chadwick, do, by these presents, grant, bargain, sell and convey unto the said William J. Chadwick,

of the City of San Diego, County of San Diego, State of California, all those certain pieces or parcels of land situated in the City of San Diego, County of San Diego, State of California, and described as follows, to wit: Lots numbered twenty-three and twenty-four, in Block numbered Seven, of Cleveland Heights Addition, in the City of San Diego, County of San Diego, State of California, according to map thereof No. 621, filed in the office of the County Recorder of said County of San Diego, February 4th, 1890. Also any right, title, interest, and estate, of every name and nature whatsoever, which the said grantor, Ida Chadwick, now has, in or to any and all property of the said William J. Chadwick, which he now has or which he may hereafter acquire, whether the same be located in the State of California, or in any other state in the United States of America, and whether the same be real property, mixed property, or personal property.

"In Witness Whereof, I have hereunto set my hand and seal this 23rd day of May, 1908.

"(Seal) IDA CHADWICK."

This instrument bears the certificate of H. E. Doolittle, a notary public in and for the county of San Diego, setting forth that it was duly acknowledged by the said Ida Chadwick on the twenty-third day of May, 1909, the date of its execution.

Exhibit Number 2 is in these words:

"This Indenture, made this 23rd day of May, 1908, between Ida Chadwick, of the County of Los Angeles, State of California, the wife of William J. Chadwick, hereinafter described, party of the first part, and William J. Chadwick, of the County of San Diego, State of California, party of the second part, Witnesseth: That the said party of the first part, for and in consideration of the sum of ten dollars, to her in hand paid, the receipt whereof is hereby acknowledged, as well as for other valuable considerations to her moving and by her received, does hereby release and forever discharge, for herself, her heirs, executors, and administrators, the said William J. Chadwick, his heirs, executors, and administrators, of and from all debts, dues, sums of money, accounts, agreements, promises, damages, judgments, executions, claims and demands whatsoever, in law or in equity, against the said William J. Chadwick,

which she, the said party of the first part now has, or which he ever had, or which she, or her heirs, executors or administrators can, shall, or may have, in, upon or by reason of any matter, cause or thing whatsoever, by virtue of being his wife, or otherwise.

"In Witness Whereof, the said party of the first part has hereunto set her hand and seal this 23rd day of May, 1908.

"(Seal) IDA CHADWICK.

"Witness: H. E. DOOLITTLE."

This instrument also bears the certificate of H. E. Doolittle, notary public in and for the county of San Diego, reciting that it was duly acknowledged by the maker thereof, before him on the said twenty-third day of May, 1908.

The transcript shows that the plaintiff and defendant intermarried at Council Bluffs, Iowa, on or about the eleventh day of May, 1904, both parties having been previously married. No children were born of this marriage, though both the plaintiff and defendant had children by a prior marriage. For a time after the marriage of said parties they lived in South Omaha, Nebraska, where the defendant conducted a grocery-store and meat market. Later, they moved to Sioux City, Iowa, where, according to the testimony set forth in the record, the defendant deserted the plaintiff on or about October, 1905. From that time until about 1908, it appears that the plaintiff had no knowledge of the whereabouts of the defendant, but having learned from some source that the defendant was in California, came to Oakland in the year 1908 and was informed by friends that the defendant was in San Diego. The plaintiff then returned to Los Angeles, where she had been living for some time, and employed an attorney to ascertain the whereabouts of the defendant. The record shows that through the efforts of this attorney the defendant was located in San Diego in the year 1908. The attorney for plaintiff then demanded of the defendant some monetary settlement, or that some provision be made for the plaintiff, who appears, at that time, to have been in ill health. Upon receipt of such demand, the defendant employed an attorney, and through the attorneys thus retained by the respective parties, negotiations were carried on which finally culminated in the signing of the instruments which we have hereinbefore set forth, on the day mentioned, and the payment by the defendant,

through his attorney, to the attorney for the plaintiff, of the sum of $1,850. Of this sum it appears that plaintiff's attorney delivered to the plaintiff the sum of $1,500, apparently retaining $350 to cover his fees and expenses. The negotiations were entirely carried on by the attorneys for the respective parties. The record shows that not a word was exchanged between the plaintiff and defendant; they not only did not discuss the terms and conditions of the instruments set forth herein or the consideration therefor, but they did not even speak to each other. In fact, the record shows practically no communication of any kind between the plaintiff and defendant, after October, 1905, although it appears that after the execution of the instruments herein referred to, the plaintiff moved to San Diego, and resided there until the beginning of this action.

The plaintiff's complaint, among other things, alleges that the defendant wilfully deserted her on or about October, 1905, and then attacks the instrument designated as Exhibit Number 1, as follows: "That upon locating the said defendant in the City of San Diego, the said defendant stated to plaintiff that he only owned two lots in the City of San Diego, and that he would sell them and give her $1850.00 if she would give him a property settlement and deed releasing all of her claim upon his estate, and that he, the said defendant, could not sell the said property unless the said plaintiff signed the said deed in settlement; that said statement by the defendant was false and fraudulent, and made wilfully and maliciously and with an intent to deceive the plaintiff and to procure her signature to an agreement releasing her interest, as defendant's wife, in the community property of plaintiff and defendant." It is then alleged that the defendant had other community property than the lots referred to. No mention is made in the plaintiff's complaint of the instrument designated as Exhibit Number 2. The complaint further sets forth that the defendant is possessed of property of the value of $175,000. The answer of the defendant denies the allegations of misrepresentation, etc., sets up the two instruments referred to, and alleges that they were executed as a full, final, and complete settlement of all differences and property rights between the parties. Also, denies that the defendant is possessed of property of the value of $175,000, or of any property of a greater value

than $42,000. The finding of the trial court was, in this respect, that the property possessed by the defendant at the time of the trial was of the value of $40,884.89. The trial court likewise found that there was no fraud or misrepresentation on the part of the defendant, and also that the defendant had exercised no duress or undue influence over the plaintiff in order to induce her to sign the two instruments referred to herein. As to the value of the property possessed by the defendant on the twenty-third day of May, 1908, the trial court found the same to be $3,700, and that it was not true that the defendant possessed any other community property than the two lots mentioned in Exhibit Number 1. The trial court likewise found that the plaintiff did not sign either of said agreements on account of any representations made by the defendant or by the defendant's attorney. At the time of the trial, the attorneys representing the respective parties on May 23, 1908, were deceased, and, therefore, what took place between them does not appear in the record, save and except that the record does show that the plaintiff was represented by an attorney by the name of Kemp, and the defendant was represented by an attorney by the name of Doolittle, from which the conclusion would be justified that both the parties to this action had independent advice. The record likewise shows that the defendant is now deceased, and that Richard W. Chadwick, executor of his last will and testament, has been substituted as the party defendant in this action. The trial court found that both of the documents herein set forth were executed at the same time, as a part of the same transaction, and for the same consideration.

For convenience we will first consider the defendant's appeal from that part of the judgment which holds invalid Exhibit Number 2, as violative of the provisions of section 159 of the Civil Code, in that it does not contain an agreement for an immediate separation of the parties, nor make any provision for the support of the wife. That section provides that a husband and wife cannot, by any contract, alter their legal relations, except as to property, and except that they may agree in writing to an immediate separation and make provision for the support of either of them, etc. The defendant, in support of his appeal, calls attention to the fact that the agreement in this case was made long after the separation; that it is not controlled by

the conditions set forth in section 159 of the Civil Code relative to making provision for the support of the wife, and cites a number of authorities having to do with agreements based upon section 159 of the Civil Code, making provision for support of the wife, and also containing stipulations relative to divorce. These cases, however, are not strictly in point. In this action the plaintiff was seeking a decree of divorce, and irrespective of whether the instrument referred to as Exhibit Number 2 is or is not valid, the court had power, under section 139 of the Civil Code, to make provision for the support of the wife where there existed no such provision by reason of any agreement of the parties. It cannot be questioned that Exhibit Number 2 makes no provision for the support of the wife. So far as that instrument is concerned, the wife is left absolutely penniless. Even though the instrument had been drawn strictly according to the terms of section 159 of the Civil Code, the trial court in the divorce action had jurisdiction to either adopt the instrument as making an equitable provision for the support of the wife, or to disregard its terms and make such suitable allowance as the necessities of the case required. The defendant has entirely overlooked section 139 of the Civil Code, and also the cases which hold that in a divorce action where an agreement is presented to the trial court purporting, in terms, to make provision for the support of the wife, the trial court may add thereto or subtract, therefrom, as the circumstances and conditions shown by the testimony may require. In the recent case of *Smith* v. *Smith*, 91 Cal. App. 743 [270 Pac. 463], decided by this court, and a hearing thereafter denied by the supreme court, the power of the court in a divorce proceeding to make an additional allowance to the wife, other than that mentioned in an agreement, was considered at length, and it was there held ''that a husband and wife executing an agreement for the support of the wife prior to divorce, are presumed to have contracted with reference to the power of the trial court to modify the agreement.'' It was likewise held that the power of the court, under section 139 of the Civil Code, is not limited to community property rights in making provision for the support of the wife. The case of *McCahan* v. *McCahan*, 47 Cal. App. 176 [190 Pac. 460], was relied upon, wherein it is said: ''Such pretended agreements, if they are to have any force, must be subjected to the examination of the divorce

court and derive their sanction from the decree made by the court with a knowledge of the facts." The opinion also cites with approval, the case of *Hughes* v. *Hughes*, 68 Cal. App. 195 [228 Pac. 675], where the court, in considering the powers that might be exercised under section 139 of the Civil Code, held as follows: "The Superior Court, in an action for divorce has jurisdiction to make, on the application of a husband, an order modifying an interlocutory decree by reducing the amount of maintenance awarded thereby, notwithstanding the fact that the parties have previously made an agreement settling their property rights, wherein the husband agreed to pay the wife a stipulated monthly sum," etc. This court then said: "If this is true where provision has been made by the agreement for the support of the wife by the husband, with stronger reason must the rule apply that the court has power to act under section 139, Civil Code, where no provision has been made and the circumstances equitably require such action." In the case at bar, as we have stated, no provision is made for the support of the wife. It does not purport to follow the terms of section 159, Civil Code. It simply stands out as a paper executed by the wife alone, purporting to relinquish all claims of the plaintiff against the defendant, his heirs, executors and administrators, and from all debts, dues, sums of money which he now has, or may have, etc., and does not reach the standard of an equitable provision considered in any of the cases cited and relied upon in *Smith* v. *Smith*, *supra*, where the power of the court to disregard such agreements is set forth and upheld. In the recent case of *Moog* v. *Moog*, 203 Cal. 406 [264 Pac. 490], cited in *Smith* v. *Smith*, *supra*, the power of the court to disregard agreements which in fact have made provision for support of the wife, is clearly and explicitly set forth, and its exercise held proper when the circumstances require the equitable interposition of the court. The court in that case held as follows (we quote from the syllabus): "In actions for divorce there is a very large discretion vested in the trial court to allow permanent support for the wife where she is granted a divorce, even in the face of contracts of settlement between the parties, and such contracts must be subjected to the court's examination, and derive their sanction from a decree made by the court with knowledge of all the facts."

Irrespective of whether Exhibit Number 2 was correctly held invalid by the trial court, the decision of this court in the case of *Smith* v. *Smith, supra,* and the cases there cited, is conclusive against the defendant upon his appeal from the order awarding the plaintiff permanent alimony in the sum of $50 a month. No question is raised as to its being excessive, and in view of the finding of the court as to the property possessed by the defendant, it is quite evident that no such contention could be made.

 ■ The plaintiff's appeal tenders the question of the binding force and effect of Exhibit Number 1. Before considering the plaintiff's argument in support of her appeal it may be stated that there is a distinction between the terms "illegality," "invalidity," and "inadequacy" of consideration. To be illegal carries with it the idea that the instrument is not only contrary to law, but contains some element of moral turpitude, while an instrument may be invalid simply because, in the interests of society, the legislature has prohibited the making or entering into the same. Inadequacy of consideration imports nothing of illegality, but may be of such a minor quantity as to render the instrument invalid or unenforceable. We mention this because the plaintiff has called our attention to a number of cases where the instruments under consideration before the court in the cases cited were in most instances either based upon a previous gambling debt or an instrument constituting a renewal of an instrument based upon such a transaction, or a transaction tainted with a like moral turpitude. In so far as Exhibit Number 1 is concerned, we find nothing illegal in any of its terms. Whether it was or was not based upon an adequate consideration was not tendered to the trial court, and so far as the record is concerned, no effort was made to show any such lack. The complaint alleges the possession by the defendant of property elsewhere than the two lots named in Exhibit Number 1, but there is no testimony of the existence of any such property, and we think there is sufficient testimony in the record to support the finding of the trial court that the defendant possessed only the two lots in question, and also, that their value was not in excess of that found by the trial court. Under such circumstances, the conclusion is well supported that on the twenty-third day of May, 1908, the defendant delivered to the plaintiff, or to the plaintiff's

attorney, a sum of money which equaled one-half of the property owned by him on that date. On the part of the plaintiff, the only question really presented to the trial court, and as we have shown by the record, was that the instrument had been secured to be executed by the wife by reason of fraud and wilful misrepresentation on the part of the defendant, and as we have stated heretofore, the record shows that the defendant absolutely said nothing; that the transaction was entirely conducted by his counsel, with counsel representing the plaintiff. Upon this appeal it is urged that the defendant did not make a full disclosure, and that confidential relations existed between the plaintiff and defendant which necessitated a full and complete statement on his part of the property possessed by him. The rule as to confidential relations does exist as between husband and wife, but the rigor of its application is somewhat lessened when the husband and wife are separated, and as in this case, had been separated for a considerable period of time, and though still husband and wife, were negotiating, more or less at arm's-length. In the recent case of *Dale* v. *Dale*, 87 Cal. App. 359 [262 Pac. 339], it is said: "In transactions between husband and wife, the rule in respect to confidential relations obtains (Civ. Code, sec. 158), and precludes either from obtaining an unfair advantage of the other through fraud, mistake or undue influence. Such transactions are considered subject to the rules which affect the relationship between a trustee and beneficiary; their relationship is in fact presumed to be confidential (13 Cal. Jur. 860, sec. 54; *Estate of Cover*, 188 Cal. 133 [204 Pac. 583]), and where either obtains an advantage over the other, the transaction is presumed to have been without adequate consideration, and to have been secured through undue influence, and the burden is then cast upon him who has the advantage to show that it was fair and free from fraud or undue influence. (Citing a number of cases.) But where dissension exists between a husband and wife, and they have become estranged on that account, the execution of a conveyance of property from the husband to the wife, which is free from fraud or undue influence, made as an inducement for reconciliation, harmony, and the renewal of marital relations, constitutes a sufficient consideration for the execution of the instrument."
 The court, further, in the consideration of that case, dealing with an objection which is urged here, that the

plaintiff did not read Exhibit Number 1, held as follows: "Under the facts of this case the respondent may not complain because he failed to read or understand the terms of the instrument. This duty was imposed upon his attorney whom he employed to draw the documents. A grantor who executes a deed of conveyance, in the absence of a showing of fraud or mistake, will not be relieved from the effect of the clear terms of the instrument, merely because he neglected to read it, or even if he is unable to read or understand it. Reasonable prudence requires one to either read the document he proposes to execute, or, if he is unable to do so, to procure the assistance of someone who can read and explain its terms." (Citing a number of cases.)

Again, in the case of *Hensley* v. *Hensley,* 179 Cal. 284 [183 Pac. 445], the supreme court, in considering the subject of confidential relations and the extent to which it affected negotiations between husband and wife who had been living separate and apart for some time, used the following language: "The husband and wife had been living apart for years. That they were in hostility the suit for maintenance sufficiently proves. The transactions for settlement of her claim were conducted through her agents and his, so there was no chance for personal influence to be exercised by him upon her. There was no presumption of confidential relation such as was found to exist in cases like *Brison* v. *Brison,* 75 Cal. 525 [7 Am. St. Rep. 189, 17 Pac. 689], and *Brison* v. *Brison,* 90 Cal. 323 [27 Pac. 186]. The parties to the contract were dealing 'at arm's-length' (citing cases). The language used in the decision in *Diamond* v. *Sanderson,* 103 Cal. 97 [37 Pac. 189], in which it was contended that a wife declaring on a note given by her husband must overcome a presumption of fraud seems applicable to the facts in this case. 'It must appear upon the face of the transaction, or by proof, that there was no consideration, or that the marital confidence was used to take an unfair advantage, or that this confidence was subsequently violated, before the burden is cast upon the plaintiff of sustaining the fairness and the consideration of the transaction against the presumption invoked by appellant.' " ▮ Thus, to apply the language to the present case, it would have to appear that there was no consideration or that the marital relation was taken advantage of by the husband to obtain from the

plaintiff an unfair advantage and secure the execution of an instrument without adequate consideration. As we have stated, no testimony was introduced showing inadequacy of the consideration. The instrument purports to be based upon a consideration of $1,850.00 in cash. The testimony shows that this sum was paid. Out of this sum the plaintiff remunerated her own counsel.

It is further contended on the part of the plaintiff that Exhibit Number 1 is violative of the terms of section 159 of the Civil Code, in that it was not made in contemplation of an immediate separation. If the instrument in question were an agreement at all, which it is not, it is simply a conveyance executed by the wife to the husband for an expressed consideration, the case of *Brown* v. *Brown,* 83 Cal. App. 74 [256 Pac. 595], would be a complete answer to the plaintiff's contention. In the case of *Brown* v. *Brown, supra,* this court had before it the question of the validity of an agreement between husband and wife relative to a settlement of property rights, executed after the separation of the parties. It was there held that section 158, and not section 159 of the Civil Code, applied. This court there said (quoting from a previous opinion) : "The plain terms of the statute authorize the husband or wife to convey to the other all title and interest in either separate or community property." We do not need to enter into a consideration of the cases cited and applied in *Brown* v. *Brown, supra,* but will content ourselves with citing that case in which a hearing was denied by the supreme court, as a full and complete answer to the plaintiff's contention, in so far as it is argued that the instrument is violative of either section 159 or 158 of the Civil Code. While executed at the same time and as a part of the same transaction, the two exhibits which we have considered herein show conclusively that they relate to different subject matters, and therefore the validity of either does not depend upon the validity of both. Even though we read both exhibits as one instrument, the conclusion that Exhibit Number 2 is void does not necessitate a like result as to Exhibit Number 1. It has been held several times that agreements between husband and wife which contain an invalid provision, if the invalid provision can be read out of the instrument without violence as to the remainder thereof, such provision will simply be disregarded. A case in point where two instruments were executed between hus-

band and wife, one held valid and the other held void, appears in the *Estate of Sloan,* 179 Cal. 393 [177 Pac. 150]. Other cases might be cited, but this one is sufficient. Some of the cases not cited ruled that a property settlement which contains a provision awarding counsel fees in the event of a divorce, may be upheld, even though that portion of the agreement relating to counsel fees must be disregarded.

Some minor contentions have been made by the plaintiff as to the sufficiency of the evidence to support certain of the findings. What we have said shows that the court found sufficient to dispose of the case, and the fact that some of the immaterial findings are not technically supported by the evidence, if such is true, may be disregarded, such as the finding of the court that the plaintiff went to San Diego for the purpose of effecting a full, final, and complete settlement of their property rights. It is wholly immaterial for what purpose the plaintiff went to San Diego on May 23, 1908. All that is material is what was done at that time. If the plaintiff executed Exhibit Number 1 on that date, making the conveyance therein set forth, for a valid consideration, it is of no moment for what purpose the journey was taken to San Diego. What was accomplished or what was done is all that need to have been found by the trial court, and as we have stated, the record shows no attempt to establish inadequacy of consideration at the time of the execution of the instrument. The extent of the defendant's property possessions at the date of the trial constituted a basis only for determining the allowance to be made to the plaintiff for her support. The extent of this property, whatever it was, accrued and was acquired after the date of the execution of Exhibit Number 1.

It follows from what we have said that the judgment of the trial court must be affirmed in whole, including that part appealed from by the plaintiff, as well as that part appealed from by the defendant. Neither party to recover costs.

Jamison, J., *pro tem.,* and Hart, Acting P. J., concurred.