[Civ. No. 3757. Third Appellate District.—May 20, 1929.]

KETURAH T. MIGALA, Appellant, v. CHARLOTTE RICKARD DAKIN, as Administratrix, etc., Respondent.

Smith & Breslin and Willard G. Cram for Appellant.

Dana R. Weller and Frank R. Carrell for Respondent.

PRESTON (H. L.), J., *pro tem.*—Plaintiff Keturah T. Migala brought this action against her former husband, William E. Rickard, to rescind a property settlement made between them on or about May 22, 1922, upon the ground that she was induced to make the settlement through the fraud, deceit, misrepresentations and undue influence of said William E. Rickard.

William E. Rickard died before the case was tried, and Charlotte Rickard Dakin was appointed administratrix of his estate and substituted as defendant in this action in the place and stead of William E. Rickard.

The case was tried by the court and judgment was entered in favor of the defendant. From this judgment plaintiff, Keturah T. Migala, prosecutes this appeal.

The court found that no fraud, deceit, misrepresentations or undue influence were practiced upon appellant; in fact, the court found against the appellant upon all the material issues in the case.

Appellant contends that the findings are not supported by sufficient evidence. The findings of the trial court

upon conflicting evidence are conclusive and all reasonable inferences are to be indulged in support of the findings. The burden is upon appellant, who claims error, to show its existence. The authorities supporting these well-known rules are legion and we only need to cite the following: *Treadwell* v. *Nickel,* 194 Cal. 243 [228 Pac. 25]; *Wilbur* v. *Wilbur,* 197 Cal. 1 [239 Pac. 332]; *Gjurich* v. *Fieg,* 164 Cal. 429 [Ann. Cas. 1916B, 111, 129 Pac. 464]. █ When the findings are attacked for insufficiency of the evidence to support them, our power begins and ends with the inquiry whether there is substantial evidence, contradicted or uncontradicted, which in and of itself will support the findings of the trial court. (*Treadwell* v. *Nickel, supra.*)

█ A careful examination of the entire record fully convinces us that all the material findings of the trial court are amply supported by the evidence.

The pertinent facts are briefly these: Appellant and William E. Rickard were married in the state of Ohio on February 10, 1897, and lived there as man and wife until 1915, when they came to California and settled in Los Angeles. Shortly after their arrival in California they purchased a house and lot in Hollywood, California, which is the property in question. The deed was made to William E. Rickard and appellant, whose name was then Keturah T. Rickard. This property was purchased by them upon the following terms: $300 cash, which was community property; a first mortgage given for $1600, and a second mortgage for $1100. In October, 1917, appellant, without any apparent reason, abandoned William E. Rickard, and never afterward lived with him. In 1919 she saw him on several occasions in the city of Los Angeles, but from 1919 to May 22, 1922, when the settlement was made, she did not see or correspond with Rickard at all. At the time of the settlement she was residing in Reno, Nevada, and had instituted an action for divorce there against Rickard on the ground of failure to provide, which action was pending at the time of the settlement. The summons and complaint in this action were served upon Rickard in the city of Los Angeles, and he employed an attorney and sent said attorney to Reno to effect a reconciliation if possible; if not, to make a property settlement with appellant. This attorney visited Reno, and in the office of appellant's attorney in that city had an in-

terview with appellant and her attorney. Being unable to induce appellant to return to her husband, said attorney informed appellant and her attorney that he would recommend to Rickard that he pay to appellant the sum of $260 if appellant would relinquish all rights she might have in the property to Rickard. Said attorney further stated to appellant and her attorney that he did not know the condition or the value of the property, but stated it had probably doubled in value since its purchase by the Rickards. Thereupon, appellant's attorney stated that he was in correspondence with lawyers in Los Angeles and was fully informed regarding the property in question. At this interview Rickard's attorney produced an affidavit made by Rickard, in which it was stated that Rickard had paid to appellant about $3,700 out of the $4,300 community property which they possessed when they arrived in the city of Los Angeles and that appellant had already received more than her share of the property. Appellant was questioned by her attorney, in the presence of Rickard's attorney, as to the truth of these statements and she admitted receiving some of the money but not all of it, but failed to specify the amount that she had received. Rickard's attorney returned to Los Angeles, prepared a property settlement agreement and a quitclaim deed from appellant to William E. Rickard, and forwarded the same, together with $260, to appellant's attorney at Reno. The $260 was retained and the contract and deed were executed by appellant in Reno and returned by her attorney to Mr. Rickard's attorney in Los Angeles. At the time of the settlement, there was pending in the Superior Court of Los Angeles County an action by William E. Rickard against appellant for divorce upon the ground of adultery, naming the man whom she afterward married as co-respondent, which fact was made known to appellant by Rickard's attorney.

Appellant contends that this case comes within the general rules controlling the actions of persons occupying confidential relations, as defined by the title on trusts (secs. 158, 2235, Civ. Code), and that the rule laid down in such cases as *Locke-Paddon* v. *Locke-Paddon,* 194 Cal. 80 [227 Pac. 715], is controlling in this case.

We are unable to agree with this contention. At the time of the settlement appellant and Rickard had been separated

nearly five years and for three years had not seen or heard from each other. Each had brought action for divorce, which cases were then pending. The negotiations for settlement between them were conducted through their attorneys; Rickard was not present and had not seen or communicated with his wife for over three years, so there was no chance for personal influence to be exercised by him upon her. Under such circumstances, there was no presumption of confidential relations, such as was found to exist in the cases relied upon by appellant.

We think this case falls within the rule stated in such cases as *Hensley* v. *Hensley*, 179 Cal. 284 [183 Pac. 445], and *Chadwick* v. *Chadwick*, 95 Cal. App. 690 [273 Pac. 86].

In the case of *Hensley* v. *Hensley*, *supra*, the Supreme Court, in considering the subject of confidential relations and to the extent it affects negotiations between husband and wife who have been living separate and apart for some time, used the following language, which is particularly appropriate in the case at bar: "The husband and wife had been living apart for years. That they were in hostility the suit for maintenance sufficiently proves. The transactions for settlement of her claim were conducted through her agents and his, so there was no chance for personal influence to be exercised by him upon her. There was no presumption of confidential relation such as was found to exist in cases like *Brison* v. *Brison*, 75 Cal. 525 [7 Am. St. Rep. 189, 17 Pac. 689], and *Brison* v. *Brison*, 90 Cal. 323 [27 Pac. 186]. The parties to the contract were dealing 'at arm's-length.'" (See, also, *Diamond* v. *Sanderson*, 103 Cal. 97 [37 Pac. 189].)

If, however, it be admitted, for the sake of argument, that a confidential relation existed between appellant and her husband at the time of the settlement, and that the burden was upon respondent to show that the transaction was fair and just, and fully understood by appellant, the evidence and finding show that respondent has fully met and sustained this burden. The court found that no fraud, concealment or misrepresentations were resorted to in the settlement and that no undue influence was exerted over appellant; that the value of all the property in question, at the time of the settlement, was of the reasonable value of $8,000, and was purchased in 1915 from funds acquired by them in the state

of Ohio, partly from the separate funds of appellant, but the larger portion thereof having been acquired through their joint efforts; that appellant had received from William E. Rickard, prior and subsequent to her abandonment of him, $3,700 out of moneys accumulated by them during their marriage. The court also found that appellant never relied upon any statements made to her by Rickard's attorney, that Rickard himself made none, and that appellant executed both the agreement and quitclaim deed freely and voluntarily, under the advice of counsel, and after mature consideration and deliberation by her.

Appellant makes a multitude of objections to the findings, but the effect of all these objections is that the court should have found in favor of plaintiff instead of defendant.

This case, in its last analysis, presents only a question of fact, and the court has resolved all conflicts in favor of the defendant and against the plaintiff and appellant; and, as we have seen, there is sufficient evidence to support the findings, so the findings are conclusive upon this court.

We see no necessity for a further discussion of the case. The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 20, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 18, 1929.

All the Justices present concurred.