[L. A. No. 24137. In Bank. Apr. 12, 1957.]

EMILY M. COLLINS, Appellant, v. ROBERT F. COLLINS, Respondent.

Vaughan & Brandlin, Vincent E. Lumbleau and Robert P. Schifferman for Appellant.

Kenneth D. Holland, Martin, Hahn & Camusi, H. Sidney Laughlin and Robert Kingsley as Amici Curiae on behalf of Appellant.

McLaughlin & Casey and James A. McLaughlin for Respondent.

SCHAUER, J—Plaintiff appeals from a judgment against her in this action in which she unsuccessfully sued her former husband to set aside a property settlement agreement of the parties and deeds executed by plaintiff to defendant pursuant to such agreement. Plaintiff claims, contrary to the findings and conclusions of the trial court, that defendant induced her to execute the property settlement agreement and deeds by breach of a fiduciary relation to plaintiff. We have concluded that to reverse the judgment would entail usurpative interference with the function of the trier of fact.

Findings and conclusions of the trial court, supported by the evidence, are as follows: In December, 1952, plaintiff told defendant that she wished a divorce because she desired to marry one Blankenship. In June, 1953, plaintiff told defendant that she was going to Nevada to obtain a divorce. On her arrival in Nevada she employed an attorney to represent her in connection with the divorce and a property settlement agreement between plaintiff and defendant. About July 10, 1953, plaintiff's Nevada attorney wrote to defendant asking that a property settlement be prepared so that it could be approved in the Nevada divorce proceeding. After communications between plaintiff's attorney and defendant, plaintiff on August 13, 1953, went to Los Angeles and she and defendant executed a property settlement agreement; plaintiff executed deeds conveying her interest in properties to defendant and defendant executed a deed conveying the residence of the parties to plaintiff. On August 17, 1953, plaintiff, who had returned to Nevada, was granted a default divorce judgment which approved the property settlement agreement. On the same day she married Blankenship.

The trial court further determined as follows: Under the property settlement agreement plaintiff "waives the necessity of . . . [defendant] specifically listing" properties standing in his name; such properties, it is agreed, become defendant's separate property except for the residence which becomes plaintiff's property. Plaintiff and her attorney began an investigation of the community property of the parties before the execution of the property settlement agreement, but plaintiff did not pursue the investigation because she was satisfied with the terms of the agreement. Defendant did nothing to preclude plaintiff or her attorney from investigation of the properties of the parties. Plaintiff when the property settlement was executed relied on the advice of her counsel, and not upon any statement of defendant. Plaintiff desired to obtain the property settlement agreement in order that she could have it approved in her Nevada decree and in order that she could obtain such decree and be free to marry Blankenship.

Further determinations of the trial court are as follows: Defendant was unwilling, when the property settlement agreement was executed, to make concessions to plaintiff other than those embodied in the agreement. Until she executed the property settlement plaintiff had the opportunity, if she was dissatisfied with it, to seek a divorce in California and have her rights to the property there determined. Plaintiff gained

an advantage by obtaining the property settlement and a Nevada divorce at an early date. "[U]nder the facts existing in this case, it is immaterial whether the property settlement agreement resulted in the defendant's receiving more of the community assets than the plaintiff received."

Plaintiff relies on the code rule (Civ. Code, § 158) that "husband or wife may enter into any engagement or transaction with the other . . . respecting property, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other, as defined by the title on trusts." (See Civ. Code, §§ 2228, 2230, 2231, 2234, 2235.) Plaintiff urges that on August 13, 1953, when she executed the property settlement and deeds, defendant had a fiduciary duty to her and was required to fully disclose to her the value and character of their property.

██ Plaintiff, however, had ample opportunity to investigate, with the aid of independent counsel, the character and value of the property of the parties. Plaintiff had contemplated obtaining a divorce for some time before she made the property settlement agreement and obtained the divorce. Defendant did nothing to hinder her investigation of the property or to cause her to execute the agreement precipitately. Defendant owed plaintiff no duty to force her to investigate the properties when she announced that she was satisfied with the agreement prepared by defendant's counsel.

██ The situation is similar to that in *Jorgensen* v. *Jorgensen* (1948), 32 Cal.2d 13, 22-23 [193 P.2d 728].[1] It is there held that "A husband at the time of divorce or separation is entitled to take a position favorable to his own interest in claiming as his separate property assets that a court might hold to be community property. Confronted with the assertion by the husband that certain assets are his separate property the wife must take her own position and if necessary investigate the facts. [Citations.] If the wife and her attorney are satisfied with the husband's classification of the property as separate or community, the wife cannot reasonably contend that fraud was committed or that there was such mistake as to allow her to overcome the finality of a judgment.

---

[1] In the Jorgensen case the former wife sought to set aside the provisions of a judgment in which a property settlement agreement was approved and accepted. Here, it is to be noted, it is not claimed that the property settlement agreement acquired any additional effect because of its approval in the Nevada decree.

. . . Plaintiff is barred from obtaining equitable relief by her admission that she and her attorney did not investigate the facts, choosing instead to rely on the statements of the husband as to what part of the disclosed property was community property.''

 The situation here is similar also to that in *Cameron v. Cameron* (1948), 88 Cal.App.2d 585, 593-595 [199 P.2d 443], where a judgment setting aside a property settlement agreement at the instance of plaintiff wife was reversed. It is there held that '' [1] When one undertakes an investigation [as Mrs. Cameron did before she made the property settlement agreement] and proceeds with it without hindrance it will be assumed that he continued until he had acquired all the knowledge he desired and was satisfied with what he learned. He cannot be heard to say that he relied on the representations of the other party [Citation.] . . . [3] The decision of plaintiff's attorneys to accept defendant's proposal without a contest, although now claimed to have been ill-advised and unfair to her, was her decision and she is bound thereby.''

 We recognize, and it appears that the trial court here recognized, the principles, stated in such cases as *Estate of Cover* (1922), 188 Cal. 133, 144 [204 P. 583], that ''in those transactions between husband and wife, where admittedly the husband secures an advantage over the wife, the confidential relation existing between them may be invoked to bring into operation the presumption of the use and abuse of the relation. In short, a husband, by reason of the marital relation, is bound in his dealings with his wife to the highest and best of good faith and as a consequence is obligated in such dealings not to obtain and retain any advantage over her resulting from concealment or adverse pressure, and he must, if he would avoid the presumption of undue influence emanating from the procurement of any advantage over her, make full and fair disclosure to her of all that she should know for her benefit and protection concerning the nature and effect of the transaction, *or else he must deal with her at arm's length and as he would with a stranger, all the while giving her the opportunity of independent advice* as to her rights in the premises. [Citations.]'' (Italics added.) Here the parties were dealing with one another at arm's length—or at least the husband gave the wife every opportunity to deal at arm's length—when the settlement agreement was negotiated. The wife had independent advice. The fact that it appears that she was eager to secure a Nevada divorce and that therefore

she did not obtain, or have her counsel obtain, a complete listing of the properties of the parties is not chargeable to the husband. ██ As the Cover case, *supra* (p. 144 [6] of 188 Cal.), recognizes, when the parties to a marriage are negotiating a property settlement agreement with recognition that their interests are adverse and are dealing at arm's length, neither spouse owes to the other the duty of disclosure which he or she would owe if their relation remained in fact a confidential one. (See *Migala* v. *Dakin* (1929), 99 Cal.App. 60, 64 [277 P. 898]; *Chadwick* v. *Chadwick* (1928), 95 Cal.App. 690, 700 [273 P. 86].) They do not need to be embittered toward each other to act at arm's length; temperate negotiation of adverse interests is much more likely than rancorous combat to produce a fair property settlement agreement.

██ It is a long recognized rule that such settlements between husband and wife (of course in the absence of fraud) are highly favored in the law. (*McClure* v. *McClure* (1893), 100 Cal. 339, 343 [34 P. 822]; *Hensley* v. *Hensley* (1918), 179 Cal. 284, 287-288 [183 P. 445]; *Hill* v. *Hill* (1943), 23 Cal.2d 82, 89 [142 P.2d 417]; *Adams* v. *Adams* (1947), 29 Cal.2d 621, 624 [1] [177 P.2d 265]; *Patton* v. *Patton* (1948), 32 Cal. 2d 520, 523 [196 P.2d 909].)

██ Plaintiff complains that the findings of the trial court are fatally defective because they do not find specifically upon the issues stated in the margin;[2] these issues, plaintiff says, were presented by the pleadings and there was evidence upon them. The particular matters to which reference is made in the margin are necessarily and adequately determined against plaintiff, either as being completely immaterial to the conclusion of law in the light of the controlling findings, or as being favorable to defendant on the essential facts, by the following findings: "That defendant did not insist or demand that plaintiff sign or execute any property settlement

[2]The complaint alleges that during the marriage of the parties plaintiff signed documents concerning defendant's purchases and sales of real estate in reliance on his representations that they were in proper form and that she need not read them. Defendant in his answer alleges that plaintiff prided herself on her knowledge of real estate transactions, kept informed as to transactions of the parties, and signed any documents which she signed during the marriage of the parties in reliance on her own judgment. Plaintiff complains that the findings are simply that plaintiff signed documents and are silent as to "the vital inquiry of the means by which such signatures were obtained."

The complaint alleges that from the time when a divorce was first discussed between the parties, in December, 1952, relations between the parties remained amicable, and defendant represented to plaintiff that

agreement; that, on the contrary, prior to the time that said property settlement agreement had been signed, plaintiff was demanding that a property settlement agreement be prepared and signed by said two parties. That at the time the said property settlement agreement was signed, as hereinabove found, and for the purpose of completing said agreement, defendant did request that plaintiff sign the deeds which are hereinabove referred to.

"That plaintiff, at the time that she signed the said property settlement agreement and deeds and at the time she obtained her divorce on the 17th day of August, 1953, had knowledge of the contents of such documents and was satisfied with the disposition of the property of the said parties which had been made in said property settlement agreement and by the said deeds. That the failure of plaintiff and her said attorney to seek any different property settlement agreement than that evidenced by the agreement dated August 13, 1953, was not due to either plaintiff's lack of knowledge of the existence, nature or value of properties of the said parties but was due solely to the fact that plaintiff was at said time satisfied with the terms and provisions of said property settlement agreement and was desirous of having such agreement signed and in her possession for presentation to the court in Nevada at the hearing on her Nevada divorce proceeding against defendant."

As a "Second, Separate and Complete Cause of Action" plaintiff alleges that there was a dispute between the parties as to the above mentioned property settlement and conveyances pursuant thereto. Plaintiff objects that the trial court made no findings as to whether declaratory relief was necessary. The findings against plaintiff sufficiently show that the controversy was determined against her; such find-

---

he would deal fairly with her. The answer alleges that defendant made no representations to plaintiff as to whether he would deal fairly with her. There is no express finding on the question whether defendant represented to plaintiff that he would deal fairly with her.

The complaint alleges that the interest of defendant in the family home, which is all that plaintiff received under the property settlement agreement, was worth less than $20,000; the answer alleges that the interest of defendant which plaintiff received was worth at least $32,500. The complaint alleges that the value of the interests received by defendant under the settlement agreement was $300,000; the answer denies this. The complaint alleges that on and since August 13, 1953, defendant's income exceeded $40,000 a year. The answer denies this. There are no findings specifically directed to the foregoing matters. Such findings are essential, plaintiff asserts, because they go to the heart of the fairness of the property settlement agreement.

ings support the court's specifically enunciated conclusion "That plaintiff is not entitled to any relief as to the property settlement agreement, and the same is binding upon both plaintiff and defendant and is valid in all respects." It was not necessary, in the circumstances, for the trial court to "find" in terms that plaintiff was not entitled to declaratory relief.

As a "Third, Separate and Complete Cause of Action" plaintiff alleges that on December 5, 1952, plaintiff at defendant's insistence, without consideration, executed a grant deed to defendant of all her interest in described parcels of real property. These parcels are among the parcels which plaintiff again deeded to defendant in 1953 pursuant to the property settlement agreement. Under the general findings against plaintiff on the question of the property settlement, it is established that the real property which (together with its asserted 1952 conveyance) plaintiff attempts to make the subject of the "third cause of action" was (subsequently to the 1952 conveyance) a subject of negotiations which led to the property settlement. Plaintiff could have, had she been so advised, raised the question of the validity or effect of her 1952 conveyance during the 1953 negotiations which resulted in the property settlement, the conveyances pursuant to it, and the divorce. Plaintiff did not choose to do so. The findings against her necessarily and sufficiently determine that her attack on her 1952 conveyance to defendant is of no more merit than is her attack on the 1953 conveyances to defendant.

Plaintiff apparently has concluded that she made a mistake and that she would like to be reestablished in the bargaining status which she occupied before she negotiated the property settlement agreement and divorced defendant. That she made a mistake can be inferred but that she is entitled to rescind, or is otherwise not bound by, the property settlement agreement cannot be. On the record before us, not only are the trial court's findings and conclusions tenable and hence binding on us, but as impellent to that court's resolution of the controversy it appears not inappropriate for us to adopt and to repeat here the language of Mr. Justice (now Presiding Justice) Shinn in *Majors* v. *Majors* (1945), 70 Cal.App.2d 619, 627 [10] [161 P.2d 494], holding, "It is not within the discretion of the court to refuse to give judgment declaring a right [under a property settlement agreement] which is properly pleaded and well established by the evidence," and

"Where good grounds exist for the granting of legal or equitable relief, judgment is given to the party entitled thereto as a matter of right and not of grace."

For the reasons above stated, the judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Spence, J., and McComb, J., concurred.

Appellant's petition for a rehearing was denied May 8, 1957. Gibson, C. J., and Traynor, J., were of the opinion that the petition should be granted.