1999 SD 45

**Cleone Kay PEKELDER, Plaintiff and Appellee,**

v.

**Harvey Lyle PEKELDER, Defendant and Appellant.**

**No. 20491.**

Supreme Court of South Dakota.

Considered on Briefs Dec. 3, 1998.

Decided April 7, 1999.

Joseph P. Barnett, Ryan N. Boe of Siegel, Barnett & Schutz, LLP, Aberdeen, South Dakota, Attorneys for plaintiff and appellee.

Thomas M. Tobin of Tonner, Tobin & King, Aberdeen, South Dakota, Attorneys for defendant and appellant.

PER CURIAM.

[¶ 1.] Harvey Pekelder appeals a trial court order awarding his former wife, Cleone Pekelder, fifty percent of the retirement plan rights earned by him before the time of the parties' divorce in 1985. We affirm.

### FACTS

[¶ 2.] The parties married in 1965 and divorced in 1985. During their marriage, Cleone filled the traditional roles of wife and mother to the parties' five children while Harvey served as the primary wage-earner. Harvey was employed for most of the mar-

riage by Farmland Industries. It is his retirement plan with Farmland that is at issue in this appeal.

[¶ 3.] The parties' 1985 divorce decree incorporated a property settlement agreement that is silent on the subject of Harvey's retirement plan. However, the agreement contains the following pertinent provision at paragraph twelve:

It is understood and agreed by and between the parties that this Agreement applies to all of the property known to the parties at this time, and that any property or property rights not contemplated or known at the time of this Agreement that have been deliberately withheld from the knowledge of the other, and not accounted for at the time of this Agreement, shall be considered to be the common property of the parties hereto, and shall be divided equally between the parties, but that any and all property or property rights acquired subsequent to the day of this Agreement shall be the separate property of the party acquiring the same and neither party shall have any right or claim in and to said subsequently acquired property.

[¶ 4.] Cleone first learned of Harvey's retirement plan in 1996 during a chance discussion with a friend of hers familiar with Farmland Industries' benefits. Cleone consulted with counsel who commenced show cause proceedings to enforce paragraph twelve of the property settlement agreement. A hearing was held and, based upon paragraph twelve, the trial court entered findings of fact, conclusions of law and an order awarding Cleone fifty percent of the retirement plan rights earned by Harvey before March 1, 1985 (*i.e.*, the date of entry of the parties' judgment and decree of divorce). Harvey appeals.

### ISSUE 1

[¶ 5.] **Is the trial court's finding that Harvey deliberately withheld information about his retirement plan from Cleone clearly erroneous?**

■ [¶ 6.] The trial court found that, during the pendency of the divorce proceedings, Harvey "deliberately withheld" the existence of his Farmland Industries' retirement plan

from Cleone, Cleone's attorney and his own attorney. Based upon this finding and paragraph twelve of the property settlement agreement, the trial court awarded Cleone a share of Harvey's retirement plan. Harvey argues the trial court's finding of a deliberate withholding of information is clearly erroneous. He further argues the award of retirement plan benefits to Cleone based upon that finding is error as a matter of law.

■ [¶ 7.] A trial court's findings of fact in a divorce case are reviewed under the clearly erroneous standard. *Priebe v. Priebe*, 1996 SD 136, ¶ 8, 556 N.W.2d 78, 80. This Court, "will not overturn the trial court's findings unless [it is] left with a definite and firm conviction that a mistake has been made." *Billion v. Billion*, 1996 SD 101, ¶ 13, 553 N.W.2d 226, 230. The trial court made no mistake in this case. A review of the hearing testimony reveals that Cleone was married at a young age, that she was largely inexperienced in business affairs and that the experience she did have was limited to cashing some of Harvey's paychecks and paying minor bills for day to day living expenses. Harvey was clearly responsible for the important financial decisions. He often told Cleone and the children to stay away from his business papers and also told Cleone that he was the one who worked for Farmland and she did not. Under these circumstances, it is clear that Cleone either had no knowledge of the retirement plan or, if she did, she did not recognize it as marital property she might be entitled to share.

[¶ 8.] Harvey certainly did nothing to assist with Cleone's knowledge or understanding of his retirement plan. There is no evidence beyond his self-serving testimony that he ever discussed the retirement plan with Cleone. Even Harvey's other witnesses on this issue could only speculate that Cleone must have absorbed some knowledge of the retirement plan over the years from hearing various conversations between Harvey and his co-workers about the plan. Harvey himself conceded during his testimony that, during the pendency of the divorce, he never discussed the retirement plan with Cleone or even with his own attorney. This

was despite Cleone's pre-divorce request for production of documents pertaining to the parties' investments and an informal arrangement between counsel for both parties to exchange information about their assets and liabilities. Based upon these facts, there is no clear error in the finding that Harvey "deliberately withheld" the existence of his retirement plan from Cleone, Cleone's attorney and his own attorney.

[¶ 9.] As additional support for his assertions of clear error, Harvey relies upon the following statement in *Jeffries v. Jeffries,* 434 N.W.2d 585, 588 (S.D.1989):

> When the parties to a marriage are negotiating a property settlement, recognizing that their interests are adverse to one another and that they are dealing at arms length, neither spouse owes to the other the duty of disclosure which he or she would normally owe if their relationship remained, in fact, a confidential one.

Harvey contends that, under this rule, a failure to disclose information about marital assets does not translate into a deliberate withholding of information.

[¶ 10.] Harvey construes *Jeffries* too broadly. It does not grant a license to hide or misrepresent the value of marital assets. *Jeffries,* 434 N.W.2d at 588. Rather, it holds that divorcing spouses living apart and negotiating a property settlement bear equal responsibility for ascertaining the nature and value of their marital assets. *Id.* In *Jeffries,* the wife failed in that responsibility by failing to make any effort to ascertain additional information about property during the negotiation process. Similarly, in *Collins v. Collins,* 48 Cal.2d 325, 309 P.2d 420 (1957), *cited with approval in Jeffries, supra,* the wife waived her husband's preparation of a list of his properties in the interest of obtaining a speedy divorce. In such circumstances, courts recognize that the wife's waiver of her right to receive complete information from her husband on the extent and value of the community property terminates the confidential fiduciary relationship between husband and wife. *See Fairbairn v. Fairbairn,* 194 Cal.App.2d 501, 15 Cal.Rptr. 548, 551—52 (Cal.Ct.App.1961). Thus, in both *Jeffries, supra* and *Collins, supra,* the reviewing

courts rejected subsequent attempts to set aside the divorce decrees for breach of the confidential fiduciary relationship and concealment of assets.

[¶ 11.] Here, in contrast with the wives in *Jeffries* and *Collins,* Cleone fulfilled her responsibility to ascertain the nature and value of the marital assets by retaining counsel and negotiating through him and by relying on his request for production of documents and his other arrangements for the exchange of information about assets and liabilities. In cases of this nature, courts recognize that the rule of *Jeffries* and *Collins* does not mean that, "a husband holding community property in his name need not make a full disclosure of the same with all relevant information known to him and unknown to his wife which might affect her judgment in the negotiations." *Fairbairn,* 15 Cal.Rptr. at 551—52.

[¶ 12.] Based upon the foregoing, Harvey's reliance on *Jeffries* is misplaced. Once Cleone and her counsel undertook discovery procedures to ascertain the nature and value of the marital assets, Harvey operated under a continuing obligation to make a full disclosure of those assets. Since he conceded in his testimony that he did not disclose his retirement plan, the trial court committed no error in finding that Harvey deliberately withheld information about the plan from Cleone.

### ISSUE 2

[¶ 13.] **Does laches bar Cleone's claim to a share of Harvey's retirement plan?**

[¶ 14.] Harvey argues laches bars Cleone's claim to part of his retirement plan benefits. For laches to bar an action, the defendant must show (1) the plaintiff had full knowledge of the facts upon which the action is based, (2) regardless of that knowledge, the plaintiff engaged in an unreasonable delay before commencing suit, and (3) allowing the plaintiff to maintain the action would prejudice the defendant. *See City of Sioux Falls v. Miller,* 492 N.W.2d 116, 120 (S.D. 1992). Here, resolution of the first issue establishes Cleone did not have full knowledge of the facts upon which the action was based. Harvey has also failed to make any

showing of prejudice in allowing Cleone to maintain her action. Accordingly, any contention that laches bars Cleone's action is meritless.

## ATTORNEY'S FEES

[¶ 15.] Cleone has filed a motion for an award of $3,136.54 in appellate attorney's fees. The motion is accompanied by an itemized statement of costs incurred and legal services rendered in accord with *Malcolm v. Malcolm*, 365 N.W.2d 863, 866 (S.D.1985). Factors considered in awarding appellate attorney's fees are: "the property owned by each party; their relative incomes; whether the requesting party's property is in fixed or liquid assets; and whether either party unreasonably increased the time spent on the case." *Wolff v. Weber*, 1997 SD 52, ¶ 14, 563 N.W.2d 136, 139—140 (SD 1997). Based upon our consideration of these factors, we grant Cleone $2,000 in appellate attorney's fees.

[¶ 16.] Affirmed.

[¶ 17.] MILLER, Chief Justice, and SABERS, AMUNDSON, KONENKAMP and GILBERTSON, Justices, participating.