**Lawrence Frederick JEFFRIES, Plaintiff and Appellee,**

v.

**Carolee Horstman JEFFRIES, Defendant and Appellant.**

**No. 16096.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 12, 1988.

Decided Jan. 11, 1989.

Rehearing Denied Feb. 7, 1989.

Jon Mattson, Deadwood, for plaintiff and appellee.

Harlan A. Schmidt, Spearfish, for defendant and appellant.

MILLER, Justice.

In this appeal we hold that the trial court did not err in (1) refusing to specifically find that the parties to the divorce action enjoyed a confidential relationship while negotiating a property settlement, and (2) refusing to set aside a default divorce decree.

## FACTS

Carolee and Lawrence Jeffries were married in Wyoming in 1965. During the course of their marriage, which produced three children, they encountered marital difficulties. The two most serious occasions prior to their divorce were in 1975 and 1978, at which time they temporarily separated. The couple reconciled after the 1978 separation, but executed a post-nuptial agreement concerning their respective property rights should either of them file for a divorce in the future. The need for a post-nuptial agreement was prompted by Carolee's excessive spending habits.

In August 1986, Carolee indicated that she was planning to leave Lawrence. Lawrence then retained attorney Robert A. Amundson (Amundson) to represent him in the divorce proceedings.[1] Carolee did not retain counsel, although she knew that she was free to do so.[2] Rather, Carolee decided to negotiate a property settlement agreement with Lawrence without professional assistance. She consulted with Amundson, who advised her that he could not represent her in the divorce proceeding

*and* that she had a right to retain a lawyer of her own choosing. However, during this consultation, Amundson answered Carolee's questions regarding the custody of the couple's children. Later, Amundson advised both Lawrence and Carolee that they could attempt to work out a property settlement and custody agreement on their own, reduce it to writing, and bring it to him to be formally drafted.

Lawrence and Carolee then finalized an agreement regarding the disposition of their property. The agreement, which was handwritten by Carolee, provided for alimony, custody and visitation of the children, and distribution of the couple's property, including payment of all marital bills by Lawrence. Amundson did not participate in these negotiations. The agreement, in Carolee's handwriting, acknowledged the existence of all of the couple's property, including Lawrence's securities, inherited property,[3] savings and pension plans. Essentially, Carolee indicated that she wanted only certain items of personal property and one-half of the value of the couple's marital home, which was valued at $80,000. The value of her one-half interest in the home ($40,000) was reduced by Lawrence's agreement to pay Carolee's accumulated debts and to provide for her purchase of a new automobile.

The handwritten agreement was presented to Amundson, who prepared a formal property settlement agreement which was executed by the parties. Carolee acknowledged that the formal property settlement agreement was consistent with her handwritten version. She also stated that she had read and understood the agreement's terms. The trial court later entered a decree of divorce incorporating the settlement agreement formulated by the parties.

Approximately four months later, Carolee moved that the decree of divorce be set aside, pursuant to SDCL 15–6–60(b), on the

---

1. Amundson had previously represented Lawrence in divorce proceedings which were instituted but later terminated in 1978.

2. Carolee had previously consulted with another attorney regarding their domestic problems.

3. Lawrence's large inheritance came from his aunt and mother. During the course of the marriage, Carolee, by her improvident spending, depleted its value by $40,000.

grounds that Lawrence induced her into signing the property settlement agreement "by making representations which were fraudulent or misrepresentations and by his misconduct." After an evidentiary hearing, the trial court denied the motion and she appeals from that holding.

## ISSUES PRESENTED

Carolee has specifically stated the issues as follows:

### I

The lower court erred by refusing wife's proposed finding that the relationship between the parties was a confidential relationship.

### II

Where wife was not represented by an attorney and where the parties occupied a confidential relationship, the court erred by (1) imposing a burden of investigation on wife, (2) failing to impose any duty of disclosure on husband, and (3) by failing to find that the agreement must be fair and reasonable and free from fraud.

### III

The court also erred by failing to find other examples of fraud or mistake legally sufficient to justify setting aside the decree of divorce.

We observe that the issues as propounded by Carolee use a "shotgun approach" to attack the entire spectrum of the trial court's order. A fair analysis of the legal arguments presented in Carolee's briefs convinces us that the primary, viable issues center around the trial court's refusal to (1) sign her proposed findings that a confidential relationship existed between the parties, and (2) find fraud on the part of Lawrence during the negotiation processes.

## DECISION

### I

WHETHER LAWRENCE AND CAROLEE ENJOYED A CONFIDENTIAL RELATIONSHIP DURING THE NEGOTIATION OF THE PROPERTY SETTLEMENT AGREEMENT.

We note that the first time this issue was specifically presented to the trial court was in Carolee's ten-page document entitled "Defendant's (Carolee's) Objections to Plaintiff's Proposed Findings and Conclusions and Defendant's Additional Proposals". Therein, at paragraph XVIII, she objected to Lawrence's proposed Conclusion of Law IV "based upon the following findings and conclusions which are hereby proposed by (Carolee):

A. Husband and wife enjoyed a confidential relationship.

B. Husband had a duty to wife under that confidential relationship.

C. That duty was fiduciary or confidential or of a trust nature."

Those subsections were followed by subsections D through R, which generally assailed the property settlement. The trial court endorsed the document as "denied."

None of Carolee's proposals are specifically designated as findings or conclusions and it is difficult to ascertain Carolee's intent in that regard. Some are obviously findings, some are conclusions and some are mixed.

Nowhere in the record does it appear that Carolee raised the confidentiality issue or presented it specifically to the trial court. Although Carolee may have technically preserved the issue, the trial court was certainly placed at a disadvantage and a meaningful appellate review is clearly hampered. We discourage such shotgun tactics.

Carolee argues to us that a confidential relationship existed between her and Lawrence which increased Lawrence's duties of disclosure and fairness with respect to the property settlement negotiations and the resulting agreement. She asserts that this relationship placed a duty upon Lawrence to disclose the nature and value of all of the couple's assets.

█ While it is generally true that a husband and wife do enjoy a confidential

relationship, *see, e.g.,* SDCL 25–2–10,[4] we do not believe that such a relationship existed here. When the parties to a marriage are negotiating a property settlement, recognizing that their interests are adverse to one another and that they are dealing at arms length, neither spouse owes to the other the duty of disclosure which he or she would normally owe if their relationship remained, in fact, a confidential one. *See Collins v. Collins,* 48 Cal.2d 325, 309 P.2d 420 (1957); *see also In re Marriage of Bradach,* 422 N.E.2d 342 (Ind.App.1981), wherein the court noted that the confidential relationship of a husband and wife applies only in those circumstances where they are *still living together.* Given the fact that Lawrence and Carolee were living apart during the time they were negotiating their property settlement, and that they were negotiating the settlement in contemplation of their divorce, we hold that no unique confidential relationship existed between this couple, and that Carolee was equally responsible for ascertaining the nature and value of the couple's marital assets. While we hold that each spouse must assume equal responsibility for ascertaining such nature and value, we do not intend to grant to estranged spouses any license to hide or misrepresent the value of any marital assets, nor will any such practice be condoned.

We must further observe that in entering its extensive findings and conclusions, the trial court found and held that Carolee had knowledge of the couple's property, (although maybe not specific values) throughout their marriage, and that she failed to make efforts to ascertain any additional information during the negotiation process. These determinations are clearly supported by the record.

## II

## WHETHER THE COURT ERRED BY NOT FINDING FRAUD SUFFICIENT TO JUSTIFY SETTING ASIDE THE DIVORCE DECREE.

The only remaining viable issue relates to Carolee's claimed fraud by Lawrence.[5]

We first note that we will not overturn the ruling of the circuit court on a property division unless we find that the court abused its discretion. *Wegner v. Wegner,* 391 N.W.2d 690 (S.D.1986); *Rogers v. Rogers,* 351 N.W.2d 129 (S.D.1984). Moreover, in the absence of fraud or some other reason which would apply to any judgment, a divorce decree which incorporates a property settlement agreement is a final and conclusive adjudication which is not subject to later modification. *Blare v. Blare,* 302 N.W.2d 787 (S.D.1981).

Here, Carolee complains that Lawrence concealed or fraudulently failed to disclose the nature and value of the assets of the parties when they were negotiating their property settlement agreement. She also argues that Lawrence deceived her by stating that the settlement was fair. We note, however, that Carolee, a school teacher with a college education, entered into the agreement voluntarily, freely and intelligently. The evidence also indicates that Carolee received from the marital estate those possessions which she wanted, as well as receiving alimony. Carolee did not operate under a mistake of fact; rather, she entered into the agreement without exercising due diligence to ascertain the specific nature and value of various marital assets. This does not constitute grounds for relief from the property settlement agreement. In the absence of fraud, free deliberate choices are not subject to relief under Rule 60(b). *Ackermann v. United States,* 340 U.S. 193, 71

---

**4.** SDCL 25–2–10 provides: "Either husband or wife may enter into any engagement or transaction with the other ... respecting property ... subject ... to the general rules which control the actions of persons occupying confidential relations with each other...."

**5.** SDCL 15–6–60(b) provides that the court may relieve a party from a final judgment, order, or proceeding, due to mistake, inadvertence, newly discovered evidence, fraud, etc. Carolee has not specifically stated upon which of the six subsections of Rule 60(b) she bases her theory. (She has not raised excusable neglect, which was the sole basis in our holding in *Clarke v. Clarke,* 423 N.W.2d 818 (S.D.1988).)

S.Ct. 209, 95 L.Ed. 207 (1950). We know of no law suggesting that because a husband is not represented by counsel, a property settlement signed by him is voidable. *In re Estate of Henry*, 6 Ariz.App. 183, 430 P.2d 937 (1967).

Given the fact that Carolee entered into the agreement knowingly and voluntarily, had knowledge of the couple's assets, and did not operate under a mistake of fact, fraud or duress, we do not believe that the trial court abused its discretion by denying Carolee's motion to set aside the judgment of divorce.

AFFIRMED.

MORGAN and HENDERSON, JJ., concur.

WUEST, C.J., concurs specially.

SABERS, J., dissents.

WUEST, Chief Justice (concurring specially).

I do not like the result of this case any better than Justice Sabers does, but it appears to me that the trial court did not abuse its discretion when it found there was no fraud. In the absence of any error by the trial court, we cannot reverse its decision. *See Wegner v. Wegner*, 391 N.W.2d 690 (S.D.1986).

SABERS, Justice (dissenting).

I dissent.

An unrepresented spouse who signs a divorce settlement prepared by counsel representing the other spouse, may attack a settlement which is not fair and reasonable and free from fraud. 28 P.O.F.2d 663 § 3 (1981); *Prophet v. Peterson*, 77 Idaho 257, 291 P.2d 290 (1955). Further, the represented spouse has the burden of proving it is fair and reasonable and free from fraud. 24 Am.Jur.2d *Divorce and Separation* § 836 (1983). In this case, Carolee was unrepresented and the agreement was not fair and reasonable. The divorce decree should have been vacated under SDCL 15–6–60(b).

The majority quotes *In re Estate of Henry*, 6 Ariz.App. 183, 186, 430 P.2d 937, 940 (1967), which states "We know of no law suggesting that because a husband is not represented by counsel, a property settlement signed by him is voidable." The above rule may be correct where lack of representation by counsel is the sole reason to set aside the agreement. However, *Henry* also states that such an agreement must be fair and equitable and free from fraud or undue influence.

The majority fails to address the equity of the agreement between Lawrence and Carolee. Even the trial court's findings point out the substantial disparity between the parties and what they received under the agreement. Carolee received property with a net value of less than $40,000. Lawrence, on the other hand, received property with a net value exceeding $115,000. Carolee received less than twenty-six percent of the property, while Lawrence received more than seventy-four percent of the property. In addition, Lawrence retained approximately $159,150 of property which he inherited, plus a pension plan valued at $17,280. When this property is included, Carolee's assets are still valued at less than $40,000, while Lawrence's total assets exceed $290,000. This staggering disparity in the parties' financial status is further widened by the income of the two parties. Lawrence's salary is $52,000, while Carolee's meager salary is $3,600 per year. Though Carolee is to receive alimony of $600 per month for one year, this amount is reduced to $400 per month over the next three years, and then terminated. This result is simply unfair.

In view of the settled law in regard to the factors to be considered for the division of property or an award of alimony, this agreement was neither fair nor equitable. *Cole v. Cole*, 384 N.W.2d 312 (S.D.1986); *Temple v. Temple*, 365 N.W.2d 561 (S.D. 1985); *Goehry v. Goehry*, 354 N.W.2d 192 (S.D.1984). In *Laird v. Laird*, 322 N.W.2d 254 (S.D.1982), the husband was awarded property valued at $159,000, while the wife was awarded property valued at $21,000. The *Laird* court held that such a property division was not fair and equitable and that the trial court abused its discretion in the

division of property. In *Clarke v. Clarke,* 423 N.W.2d 818 (S.D.1988), the unrepresented wife was awarded approximately five percent of the marital assets. She later hired counsel and sought to vacate the judgment under SDCL 15-6-60(b). This court reversed the trial court's refusal to set aside the judgment. The *Clarke* court held that the applicant had showed excusable neglect and that she had a meritorious defense as she would be entitled to a judgment more favorable than the current one upon a new trial. The meritorious defense requirement was easily satisfied because of the unfair and inequitable judgment. Therefore, the majority's result is not only unfair and inequitable but contrary to leading precedent in this court. Carolee should be granted relief from the inequitable agreement prepared by her husband's attorney, which she signed while unrepresented. This clearly qualifies as "[a]ny other reason justifying relief" under SDCL 15-6-60(b)(6).

The majority emphasizes the fact that Carolee should have investigated further prior to negotiating the agreement. The majority also emphasizes the fact that Lawrence and Carolee worked out the agreement independent from his counsel and that his counsel merely drafted the finished product. This ignores the reality of the situation. Lawrence was able to negotiate with the benefit of sound legal advise, while Carolee was on her own. Though Lawrence's counsel advised Carolee that she could retain independent counsel, he could not advise her as to the propriety of entering into the agreement. Further, there was evidence that Lawrence had strong influence over Carolee, as he abused her physically. In view of this, and the final inequitable result, the majority's statement that Carolee "entered into the agreement voluntarily, freely and intelligently" is questionable at best, and Carolee should be granted relief under SDCL 15-6-60(b).