**Cristen Kay KLEIN, Plaintiff and Appellee,**

v.

**Kevin George KLEIN, Defendant and Appellant.**

**No. 17837.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 8, 1992.

Decided May 19, 1993.

---

* She was not married when the principal action was heard or decided.

Thomas E. Adams of Voelker and Adams, Deadwood, for plaintiff and appellee.

Jerry C. Rachetto, Deadwood, for defendant and appellant.

MILLER, Chief Justice.

Kevin Klein ("Kevin") appeals a judgment and decree of divorce and several orders implementing that divorce decision. We affirm the trial court in all respects.

## FACTS

Kevin and Cristen Klein ("Cristen") were married in late July 1988. Kevin had just completed a divorce from his first wife and had recently gone through bankruptcy. Kevin is a licensed plumber and owns his own plumbing business. Cristen is a college graduate and was working for the county's centennial commission when she married Kevin.

After approximately six months of marriage they decided to have a baby. At that time, they discussed how the child should be raised and agreed Cristen should quit working until the child was old enough to go to school (i.e., approximately five years old). After Cristen gave birth she quit her job and stayed at home to care for Devin, their only child.

Cristen testified that as soon as she got pregnant, Kevin seemed to lose all interest in her. He went "downtown" every evening and often didn't come home at all. The birth of Devin did not help. Finally, Cristen confronted Kevin and told him he had to decide whether he was going to be a husband and a father or whether he was going to continue going out every night. About three days later, Kevin told Cristen he wanted a divorce.

Kevin told Cristen to hire an attorney to draft an agreement. He said he would pay $1,000 per month alimony for five years so she wouldn't have to work while raising Devin. He also said he would pay $500 per month child support. Later, Kevin told her he could only afford to pay $800 per month alimony and $500 per month child support. Cristen agreed to accept $800 per month alimony and suggested that after two years her credit card debt and home mortgage would be paid and then the alimony could be reduced to $500 per month.

Cristen's attorney Thomas Adams drafted a "Stipulation and Property Settlement Agreement" (hereinafter "Stipulated Agreement") which provided that Cristen would keep the house and remain solely responsible for all outstanding debt on it. Kevin would keep his plumbing business.[1] Cristen remained solely responsible for credit card debt in her name.[2] Cristen was allowed to keep the 1976 MG automobile she brought into the marriage and Kevin agreed to supply Cristen with a four-wheel drive vehicle in the winter. Kevin was allowed to keep the new Dodge Talon sports car they had recently purchased using Cristen's credit. Kevin was obligated to make the payments on the sports car and provide insurance. If Kevin failed to make a payment Cristen had the right to repossess the automobile in order to protect her credit rating.

Cristen filed for divorce on June 5, 1991. Cristen's attorney mailed a copy of the Stipulated Agreement to Kevin on June 12, 1991. A cover letter to the Stipulated Agreement stated:

> You should review these documents carefully, particularly the Stipulation and Property Settlement Agreement as it does set out your legal rights and responsibilities. If you have any questions

regarding this or any other matter in the divorce action, you are advised to seek your own legal counsel.

The cover letter also stated "If the documents met [sic] with your approval, the same can be signed at my office located in Lead ..." Cristen testified that Kevin came to the house and read through her copy. They discussed the Stipulated Agreement and he raised no objections to it. She testified that he wanted to sign the document immediately because he wanted to make sure he got the sports car.

On June 14, 1991, Kevin went to Thomas Adam's office and wanted to sign the agreement. Kevin indicated to Adam's secretary, a notary public, that he had read the document and understood its contents. He then signed the Stipulated Agreement and his signature was notarized. The paperwork was processed and on August 14, 1991 the trial court entered a divorce decree based on the Stipulated Agreement.

On October 22, 1991, Kevin filed a "Motion to Adjust Child Support." The trial court denied the motion on January 31, 1992 finding that "pursuant to SDCL 25–7–6.10 the Court will allow deviation from the schedule provided in SDCL 25–7–6.2 on the basis of the prior agreement of the parties, the extra income of the Defendant and the financial condition of the parties."

On October 23, 1991, Kevin filed a "Motion to Vacate Judgment and Decree of Divorce" based on SDCL 15–6–60 and requested relief on the grounds of "mistake, advertence [sic], surprise and excusable neglect." He supported his motion to vacate with an affidavit in which he alleged he had signed the Stipulated Agreement without reading it and "his emotional state of mind after the marriage break-down prevented

---

1. Contrary to assertions in Kevin's briefs, his business was financially successful. In 1990, the business reported gross receipts of $130,157 to the IRS. There was also testimony that Kevin received substantial "trade outs" in the form of cash and services that were not reported in this amount (For example, he acknowledged that he received $10,000 in gambling chips at a local casino). *After deducting all expenses the business showed a net profit of $35,976 in 1990.*

2. Kevin admitted that he used Cristen's credit cards for cash advances for gambling money. Cristen testified that she was unaware Kevin was using her credit cards because he would take the bills out of the mail before she saw them. As a result, Cristen has approximately $10,000 in outstanding credit card debt. She testified that she is solely responsible for the cards and must pay the debt in order to maintain her credit rating.

him from taking the necessary action to protect his legal rights...."

After hearing the testimony and judging the credibility of the witnesses, the trial court concluded Kevin had "failed to show that he entered into the Stipulation and Property Settlement Agreement for any reason of mistake, advertence [sic] surprise or excusable neglect." The trial court also found Kevin had "failed to show any emotional instability to support a vacation of the Judgment and Decree of Divorce." Last, the trial court found Kevin had failed to show the Stipulated Agreement was "so inequitable as to let this Court conclude that he would have reached a better settlement had this matter been tried, rather than be settled by stipulation." The trial court denied Kevin's motion to vacate the judgment and decree of divorce.

On November 20, 1991, Kevin filed a motion to eliminate the alimony payments on the grounds that he "did not agree to the alimony terms and conditions stated in the Property Settlement Agreement." Cristen resisted the motion to eliminate alimony on the grounds that Kevin had not proven, or even alleged, a change in circumstances. The trial court denied the motion and found Kevin had not shown any change in circumstances.

On January 13, 1991, Kevin filed a motion requesting the trial court to stay all payments under the agreement pending appeal and to set an amount for a supersede as bond to guarantee such payment. Cristen objected because it would leave her with no means of support during the appeal. She also filed a motion for interim support. The trial court decided to grant the motion for a stay and set the supersedeas bond at $10,000. The trial court also ruled Cristen was entitled to interim support in the amount of $500 per month and specifically ordered this interim support would not be credited towards the alimony amount on appeal.

Cristen filed a motion requesting attorney's fees in the amount of $1,917.12. The trial court awarded Cristen the full amount of her request.

After the trial court ruled on all the motions, Kevin returned the sports car to Cristen and claimed he was no longer liable to make payments on it. On February 7, 1992, Cristen filed a motion with the trial court requesting an order compelling Kevin to comply with the Stipulated Agreement and continue making the car payments. Cristen further noted that since the car was worth less than the amount owed, Kevin was placing her in a position of being responsible for a $3,000 deficiency. On February 11, 1992, Kevin filed a notice of appeal to this Court. Subsequently, Kevin filed a response in the circuit court to Cristen's motion concerning the car payments. He contended the trial court had no jurisdiction to address the motion to compel payment because his notice of appeal eliminated the trial court's jurisdiction. The trial judge concluded that the dispute over the car payments was a "trivial matter" and therefore he retained jurisdiction. *See Ryken v. Ryken*, 440 N.W.2d 307 (S.D. 1989) (trial court retains jurisdiction over trivial matters while case is on appeal). The trial court ordered Kevin to continue his payments and bring the automobile insurance up to date.

## DECISION

We write specially to remind appellate counsel of their obligation to state the facts "fairly, with complete candor, and as concisely as possible." SDCL 15–26A–60(5). We recognize that sometimes, in the throes of zealous advocacy, the facts are inadvertently distorted. However, the facts set forth in Kevin's briefs appear to go beyond inadvertent distortion. For example, at page ten in his brief, Kevin states, "There is no dispute that Kevin was emotionally unstable at the time he executed the Property Agreement." It is simply incomprehensible for Kevin to claim it was *undisputed* he was emotionally unstable at the time in question. His emotional condition was the primary factual dispute and his testimony was contradicted by testimony from Cristen and other witnesses. *The trial court specifically stated that Kevin had failed to prove any emotional instability.*

The same disingenuousness is displayed in Kevin's brief where he states: "There is no dispute that Kevin did not read or understand the Stipulation." Cristen testified that Kevin came to her house and read the Stipulated Agreement in her presence. Linda Gorton, who notarized Kevin's signature on the Stipulated Agreement, testified that she always asks if the person has read the document and understands it. A fact is not undisputed merely because one party believes their version of the facts is the truth. Those statements in Kevin's briefs go beyond artful manipulation of the facts.

Even more troublesome is Kevin's contention that: "There is no dispute that Kevin's father had been recently killed in a tragic Homestake Mine accident." The settled record does not contain any indication that the trial court was ever made aware of the unfortunate death of Kevin's father. Kevin's brief does not cite to the settled record in support of this "undisputed" fact. We are left with the impression that Mr. Rachetto has attempted to affect the outcome of this appeal by interjecting matters which were not considered by the trial court. A final distortion of the facts is Kevin's insistence on calling the Stipulated Agreement a "default divorce stipulation." We are left wondering how any agreement signed by both parties can be depicted honestly as a "default stipulation."

> The duty of an attorney to his client demands nothing more than an honest effort to secure justice for such client; it does not permit, neither does it excuse, a resort to deception to procure for a client even that to which the attorney honestly believes his client entitled.

*In re Wilmarth,* 42 S.D. 76, 172 N.W. 921, 925 (1919). *See also,* SDCL 16–18–19.

We remind all appellate counsel that "[e]ach statement of a material fact shall be accompanied by a reference to the record where such fact appears." SDCL 15–26A–60(5). *See also J.R. Watkins Co. v. Beisel,* 78 S.D. 413, 103 N.W.2d 333 (1960). Failure to provide appropriate references to the record imposes an unreasonable burden on an already overburdened judicial system. The courts of this state cannot be expected to search through settled records for support for litigant's factual assertions.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT REFUSED TO VACATE THE DIVORCE DECREE.

SDCL 15–6–60(b) authorizes a trial court to provide the "extraordinary relief" of vacating a judgment "upon a showing of exceptional circumstances" such as "mistake, inadvertence, excusable neglect, surprise and fraud." *Clarke v. Clarke,* 423 N.W.2d 818, 820 (S.D.1988); *Haggar v. Olfert,* 387 N.W.2d 45 (S.D.1986). In addition, the party seeking to have the judgment vacated must show they have a probable meritorious defense. *Clarke,* 423 N.W.2d at 820–21. A motion for relief from judgment is in the sound discretion of the trial judge and will not be reversed except for abuse of discretion. *Id.*

*Clarke* is an illustrative case on vacating judgments. It involved a *default* divorce decree entered against a wife while she was in an alcohol treatment center recovering from a nervous breakdown. Her husband filed for divorce and convinced her she would be taken care of in the divorce decree. We held the wife had demonstrated "excusable neglect" because of her emotional state, alcoholic condition, and her reliance on her husband's assurances. We also stressed that additional scrutiny was given to the situation because the decree was issued by default, with neither the wife nor her attorney taking part. *Clarke,* 423 N.W.2d at 820.

Kevin relies on *Clarke* and contends his divorce decree should have been vacated because he was emotionally unstable as a result of the divorce. The trial court refused to vacate the divorce decree and we affirm that decision for the following reasons.

First, Cristen did not receive a "default" judgment against Kevin. The judgment was entered pursuant to the Stipulated Agreement signed by both parties. In *Jeffries v. Jeffries,* 434 N.W.2d 585, 588 (S.D. 1989), we discussed a similar stipulated divorce agreement and stated that "[i]n the absence of fraud, free deliberate choices are not subject to relief under Rule 60(b)."

*Id.* at 588. We went on to add: "We know of no law suggesting that because a husband is not represented by counsel, a property settlement signed by him is voidable." *Id.* at 589.

Second, Kevin made little, if any, showing of excusable neglect. What little evidence Kevin provided was controverted by testimony from Cristen and another witness. The trial court judged the credibility of the witnesses and concluded Kevin had failed to prove excusable neglect. SDCL 15-6-52(a). *Insurance Agents, Inc. v. Zimmerman,* 381 N.W.2d 218 (S.D.1986). The trial court's findings were not clearly erroneous and will not be set aside. *Proceedings for Dep. in Court of Monies,* 417 N.W.2d 187 (S.D.1987).

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN SETTING SUPERSEDEAS BOND AND ORDERING INTERIM SUPPORT.

■ The trial court has authority to allow a supersedeas bond. SDCL 15-26A-25 and 15-26A-31. The trial court has authority to provide for interim support pending appeal. SDCL 25-4-38. In appropriate circumstances, a trial court may order that interim support should not count towards the alimony amount being appealed. *Ryken v. Ryken,* 440 N.W.2d 307 (S.D.1989). We affirm the trial court on this issue.

## THE TRIAL COURT DID NOT ERR BY REFUSING TO ELIMINATE ALIMONY.

■ Even though alimony was set by agreement of the parties, the trial court still had jurisdiction to modify it if necessary. *Paradeis v. Paradeis,* 461 N.W.2d 135 (S.D.1990). However, no modification of alimony can be made unless there is a change of circumstances from those that existed at the time the alimony was established. *Id.* at 137. The party seeking a change in alimony has the burden to prove a change in circumstances. *Id.* at 137 (citing *Wegner v. Wegner,* 391 N.W.2d 690 (S.D.1986)).

Kevin made no showing of a change in circumstances before the trial court. He simply re-alleged he had not read the Stipulated Agreement before he signed it. The trial court did not abuse its discretion when it refused to modify alimony. *Paradeis,* 461 N.W.2d at 137.

## THE TRIAL COURT DID NOT ERR IN ORDERING KEVIN TO MAKE CAR PAYMENTS.

■ Cristen requested an order to compel Kevin to make payments on the sports car as required by the Stipulated Agreement. Cristen noted the car had been purchased on her credit and therefore Kevin's refusal to make his payments threatened her credit rating and potentially subjected her to responsibility for any deficiency. Kevin resisted the motion by arguing the agreement did not require him to make payments. The trial court ordered Kevin to keep the car and continue to make the payments.

Kevin has failed to cite any authority in support of his position. *State of Kan. ex rel. Adams v. Adams,* 455 N.W.2d 227 (S.D.1990). The Stipulated Agreement was approved by the trial court and incorporated into the judgment decreeing divorce. The trial court had authority to order Kevin to comply with the terms of the judgment.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN AWARDING CRISTEN ATTORNEY'S FEES FOR OPPOSING THE MOTION TO VACATE.

■ The trial court has discretion to grant requests for attorney's fees. SDCL 15-17-7. *Fox v. Fox,* 467 N.W.2d 762 (S.D. 1991).

Kevin has provided no basis for this Court to find the trial court abused its discretion.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN SETTING CHILD SUPPORT EXCEEDING THE STATUTORY GUIDELINES.

■ The trial court ruled the Stipulated Agreement was valid and the judgment of divorce would not be vacated. In that Stipulated Agreement Kevin and Cristen agreed child support would be $500 per month, even though it was in excess of the statutory guidelines. The trial court has authority to deviate from the guidelines in

situations involving agreements between the parties. SDCL 25–7–6.10(8).

We affirm the trial court in all respects and direct Kevin to pay Cristen $1,000 for appellate attorney's fees.

WUEST, SABERS and AMUNDSON, JJ., concur.

HENDERSON, J., concurring in result.

HENDERSON, Justice (concurring in result).

Totally convinced that this Court has decided this case correctly on the merits, I concur. However, certain language in this opinion prevents me from voting for its entirety.

It is true that, SDCL 15–26A–60(5) does, indeed, put the burden upon all appellate counsel to reference the record with respect to material facts upon which they rely. When I came on this Court some 15 years ago, that statute was heeded by nearly every lawyer who wrote a brief. However, down through the years, many lawyers in our state have failed to abide by said statute. An erosion of compliance has developed. As the Chief Justice has pointed out, when lawyers fail to do this, we must, on this Court, engage in the work of appellate counsel. When the record is referenced to material facts, an appellate judge can mentally rivet on the testimony or exhibits. My mild objection, in the majority opinion, is to this sentence: "The courts of this state cannot be expected to search through settled records for support for litigant's factual assertions." It is the responsibility, in my opinion, of the Justices of this Court, and staff employed by this Court, and law clerks hired by the Justices to ease their burden, to examine the settled record so that a studied decision is ultimately handed down. My experience has been that the road to a successful decision is paved, with not only good intentions, but solid connections to the record. Lawyers must justify their brief; but trial judges and appellate judges must justify their decision by understanding the facts, choosing the correct legal precept, and employing the force of reasoning. The sentence, to which I have alluded, is just a little too expansive for my judicial tastes.

Lest there be any doubt, I agree that Attorney Rachetto has advocated his cause in a very loose manner and interjected facts without foundation. We decide cases by the settled record; we are bound to do so, in law. Zeal in advocacy can create a heady experience and fulfill a desire to "win the case" but does not comport, as an example with SDCL 16–18–19 which provides:

It is the duty of an attorney and counselor at law to employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never to seek to mislead the judges by any artifice or false statement of fact or law.

Expressed simply, it is an attorney's duty to use truthful means in advocating his client's cause. Misleading the court constitutes a violation of counsel's oath on admission to practice law. *Binegar v. Day*, 80 S.D. 141, 120 N.W.2d 521 (1963). Perhaps it would be wise to remind the practicing attorneys in South Dakota of the oath which they took when they were admitted to practice. SDCL 16–16–18 provides:

I do solemnly swear, or affirm, that:

I will support the Constitution of the United States and the Constitution of the state of South Dakota;

I will maintain the respect due to courts of justice and judicial officers;

I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, nor any defense except such as I believe to be honestly debatable under the law of the land;

I will employ for the purpose of maintaining the causes confided to me *such means only as are consistent with truth and honor*, and will never seek to mislead the judge or jury by any artifice *or false statement of fact* or law;

I will maintain the confidence and preserve inviolate the secrets of my client, and will accept no compensation in connection with his business except from him or with his knowledge or approval;

I will abstain from all offensive personality, and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged;

I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay any man's cause for lucre or malice. (Emphasis supplied mine).

Another aspect of this decision is troubling. This concerns the dissertation of a "default divorce stipulation." Attorney Rachetto is rebuked for using this phrase. Perhaps the reference to the usage of this phrase should not spawn a study in etymology, i.e., a tracing in the history of this phrase or the word components thereof. Suffice it to say, the parties entered into a "Stipulation and Property Settlement Agreement" only ten (10) days after the divorce action was instituted. This agreement bears that heading or caption. This Court now condenses it into this phrase "Stipulated Agreement." Attorney Rachetto dubbed it a "default divorce stipulation." In over a quarter of a century of trial practice and acting as a trial judge—an uncontested divorce case was referred to as a "default divorce." "Default divorces" were heard on a calendar on a certain day. Lawyers and trial judges used that language, over and over again, as a "default divorce." The "default divorces" arose from a "stipulation." Attorney Rachetto married these two phrases together and called it a "default divorce stipulation." In my opinion, the majority is being unduly harsh to Mr. Rachetto on this specific criticism. It is extremely strained, in this specific instance, to infer or imply that such a reference by Mr. Rachetto could be, in the words of *In re Wilmarth*, 42 S.D. 76, 172 N.W. 921 (1919), "a deception."

Finally, I wish to express that Kevin Klein exercised bad judgment in not being represented by counsel. His predicament stems from his other decisions which affixed his domestic responsibility. He wanted Cristen. He wanted a child. Then, he wanted a quickie divorce. He voluntarily signed an agreement for freedom. No

fraud was perpetrated upon him. But here, the freedom was not free. As life goes on, he can petition if there is a change of circumstances.